## SATTERTHWAITE V. VREELAND.

*Commissions — for sale of real estate — when agent not entitled to — Evidence.*

Plaintiff was employed by defendants, for a commission, to sell lands, at a price not less than $1,500 per acre.   He was subsequently authorized to sell for $1,385 per acre within thirty days.   After that time had expired without a sale, defendants themselves sold the lands for $1,200 per acre.   It was not shown that a sale could have been made for more than $1,200, and there was evidence that it could not be sold for that price.   *Held,* that defendants were not liable to plaintiff for a commission upon the sale.

Where evidence is uncontradicted, and in no respect improbable, neither the court nor the jury is at liberty to reject it as unworthy of belief.

APPEAL by defendants from a judgment in favor of plaintiff, and from an order denying a new trial made upon the minutes of the justice holding the circuit.

The action was brought by J. Fisher Satterthwaite against George Vreeland and others, to recover for commissions upon a sale of real estate. The facts appear fully in the opinion.

*John Chetwood*, for appellants.

*F. R. Coudert*, for respondent, cited *Lloyd* v. *Matthews*, 51 N. Y. 125; *McClave* v. *Paine*, 49 id. 563; *Redfield* v. *Tegg*, 38 id. 212; *Moses* v. *Bierling*, 31 id. 462; *Chilton* v. *Butler*, 1 E. D. Smith, 150.

DANIELS, J. The plaintiff recovered a verdict for commissions on the purchase price of a farm of one hundred and fifteen acres, conveyed by the defendants to Samuel W. Torrey for the consideration of $1,200 an acre. It had been in the plaintiff's hands, as a real estate broker, for sale, previous to the time when the defendents finally sold it, and his evidence was that it remained in that condition when the sale was made. But according to his own statement, his employment was to sell at a particularly specified price, which was changed during the time he was employed, but never reduced to $1,200, the sum per acre for which the sale was finally made. The price at which he was first empowered to sell was $1,500 an acre, and on the 25th day of September, 1869, that was reduced by a written option for ten days to the sum of $1,385 an acre, and on the 21st day of July, 1870, the option was revived and extended in writing for the period of thirty days. These were the only changes shown upon the trial in the price for which the plaintiff was authorized to sell the farm, and no sale was agreed upon and no purchaser procured who was willing to purchase the farm at either of those prices.

From these facts, which are shown by the evidence which the plaintiff himself gave as a witness, he had no authority at any time to contract for the sale of the farm at a less price than $1,385 an acre. That was the lowest sum for which he was ever authorized to make the sale, and his right to sell for that, or for any thing less than the price of $1,500 an acre — the price originally fixed — was extinguished by the expiration of the thirty days for which the option was extended before the defendants sold it to Torrey for $1,200 an acre.

A sale for the price at which the plaintiff was empowered to sell was in the nature of a condition, on which his right to commissions was, by the terms of his employment, rendered dependent. If he procured a purchaser for either of such sums during the time in which he was at liberty to accept the one or the other, then his commissions would be earned and a right of action created for their recovery. But until he did that, as long as he was not interfered with during the periods fixed within which the sale could be made for the smaller sum, no such right accrued to him. To maintain a claim by him for his commissions it was necessary that he should be able to show that he had either procured a purchaser for the property at the price he was empowered to sell for, or that the defendants had deprived him of the opportunity to do so while the privilege of selling for the smaller sum continued to exist. For by the unwritten or general employment no time whatever was fixed or designated during which the plaintiff was authorized to sell at $1,500 an acre. That bound the defendants, as owners, for no particular period of time, and for that reason it could not prevent them from making a *bona fide* sale of the farm at a less sum, in case they elected to do so, without incurring any liability for commissions to the plaintiff. All that he was entitled to under that employment was a reasonable opportunity to find a purchaser at $1,500 an acre; and after he had failed to do so, and proved unable to sell for the smaller sum during the periods specified for that purpose, the defendants were at liberty to sell for less, without becoming liable to the plaintiff for commissions. That resulted directly from the terms of the employment, and their right to dispose of the property owned by them. They in no manner abridged or restrained their own right to sell, unless the plaintiff could sell for one or the other of the prices he was authorized to receive under the terms of his employment. By making a sale on such terms, while the authority continued, he would become entitled to his commissions, but as he failed to do that, no right to them was created. Such were the plain terms of his employment, and as long as he failed to perform them the defendants were under no obligation to pay him what they agreed to only as a compensation for performance. That was the import of the contract under which he was employed, and the propriety of the consequence deduced from it is sustained by authority. *Jacobs* v. *Kolff*, 2 Hilt. 133; *Holley* v. *Townsend*, 16 How. 125; *Barnard* v. *Mounot*, 33 id.

440; *Doty* v. *Miller*, 43 Barb. 529; *Briggs* v. *Rowe,* 4 Keyes, 424. These cases, as well as those relied upon by the plaintiff, require that the broker shall find a purchaser at the price for which he has been authorized to sell, where a specific price may be fixed, before he can lawfully demand his compensation, when he has not been prevented from doing so by any improper interference of the owner during the time in which he was allowed to effect a sale. The relation is one of contract, requiring the application of the same legal principles as control the rights of parties under other similar agreements.

The plaintiff not only did not sell for either of the prices designated, but, beyond that, it did not appear that there was the least probability of his ever doing so ; and as long as that was the case, and by the general terms of his employment no time was fixed during which he could have the privilege of selling, after the last written option expired the defendants themselves were under no obligation preventing them from selling their farm for a lower price, as that was not a mere device to avoid the payment of the plaintiff's compensation. And that it was not a device of that nature was clearly shown upon the trial; for Torrey, who was called as a witness and examined on the plaintiff's behalf, testified that he positively refused to buy the farm of the plaintiff at the lowest price for which he was authorized to sell, and that of his own motion he afterward applied to and negotiated with the defendants for its purchase, and finally obtained it at the price of $1,200 an acre, which was $185 less per acre than the smallest sum at which they authorized the plaintiff to sell it. This evidence was uncontradicted, and as long as it was in no respect improbable neither the court nor the jury was at liberty to reject it as unworthy of belief. *Newton* v. *Pope*, 1 Cow. 109; *Dolsen* v. *Arnold*, 10 How. 528 ; *Lomer* v. *Meeker*, 25 N. Y. 361 ; *White* v. *Stillman*, id. 541.

The evidence was insufficient to warrant a verdict in the plaintiff's favor, and the defendants' motion for a new trial ought, for that reason, to have been successful. This particular point was not presented on the motion for a nonsuit, nor in any request made to charge, and as it is the only one on which the plaintiff's case was defective, and the legal theory of the charge was correct, the relief to which the defendants are entitled is to have the verdict set aside.

The order appealed from should therefore be reversed, with costs of the appeal to abide the event, and a new trial ordered on payment by the defendants of the plaintiff's costs and disbursements on the trial already had.

*Judgment reversed and new trial ordered.*